UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PAULA S.,[1] | : | Case No.  3:21-CV-57 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Paula S. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #13), the Commissioner's Memorandum in Opposition (Doc. #16), Plaintiff's Reply (Doc. #17), and the administrative record (Doc. #10).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively filed her applications for Disability Insurance Benefits and for Supplemental Security Income benefits in March 2018, alleging disability due to several impairments, including blindness/low vision, Colitis, post-traumatic stress disorder (PTSD), and depression. (Doc. #10, *PageID* #262). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Kevin R. Barnes. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful activity since November 1, 2017, the amended alleged onset date.
>
> Step 2: Plaintiff has the following severe impairments: refractive amblyopia, alternating exotropia nystagmus, diplopia, colitis, PTSD, depression, and anxiety.
>
> Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels subject to the following nonexertional limitations: (1) performing simple, routine and repetitive tasks; (2) no fast-paced production requirements; (3) involving only simple, work-related decisions; (4) few, if any, workplace

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

       changes; (5) occasional public interaction; (6) occasional interaction with coworkers; and (7) no tandem tasks."

       Plaintiff is unable to perform any past relevant work.

Step 5:  Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #10-2, *PageID* #s 57-67). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since November 1, 2017. *Id.* at 68.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #10-2, *PageID* #s 57-67), Plaintiff's Statement of Errors (Doc. #13), the Commissioner's Memorandum in Opposition (Doc. #17), and Plaintiff's Reply (Doc. #18). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

  Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

  The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.  Discussion

In her Statement of Errors, Plaintiff sets forth a single claim: "Whether the ALJ reversibly erred in evaluating the medical evidence and medical source opinions." (Doc. 13, *PageID* #986). Under the umbrella of her single claim, Plaintiff's Statement includes several distinct arguments. *Id*. at 986-93. For the convenience of the Court, each of those arguments is discussed separately.

#### A. Step Two

Plaintiff first alleges that the ALJ failed to classify her multiple traumatic brain injuries (TBI) and migraine headaches as a medically determinable impairments, and that this failure led to an improper RFC determination. (Doc. #13, *PageID* #s 989-90).

At Step Two of the five-step sequential evaluation process, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimaint's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1522(b).

The Sixth Circuit has construed Step Two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted).

In the present case, ALJ Barnes found at Step Two that Plaintiff had several severe impairments: refractive amblyopia, alternating extropia nystagmus, diplopia, colitis, PTSD, depression, and anxiety. (Doc. #10-2, *PageID #s* 57-58). The ALJ also found that Plaintiff had non-severe impairments: TBI, balance issues due to inner ear absence, and migraines. *Id.* at 58.

An ALJ does not generally commit reversible error by finding that an impairment is non-severe under two conditions: (1) the ALJ also found that the claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining Steps in the sequential evaluation. *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) ("when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz* 837 F.2d at 244); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining [S]teps.") (citation omitted)).

As noted above, the ALJ meets the first condition as he found that Plaintiff had several severe impairments at Step Two. (Doc. #10-2, *PageID #*57). Thus, the question is whether the

5

ALJ considered all of Plaintiff's impairments at the remaining steps. *See Pompa*, 73 F. App'x at 803 ("Because the ALJ found that [the claimant] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

A review of the ALJ's decision reveals that he considered all of Plaintiff's impairments when assessing her RFC. With regard to Plaintiff's migraine headaches, specifically, ALJ Barnes noted that these were characterized as "mild" and "occasional" and that they responded favorably to chiropractic manipulation and medication. (Doc. #10-2, *PageID* #58) (citing Doc. #10-7, *PageID* #s 673-84; Doc. #10-8, *PageID* #s 782, 846, 854). Similarly, as for Plaintiff's TBI and inner ear abnormality causing disequilibrium, ALJ Barnes acknowledged that she had a history of multiple concussions but pointed out that she has had two brain imaging studies, one in January 2018, which was normal, and another, in February 2019, which "showed only 'mild' and 'stable' signal abnormalities with no acute ischemic changes. *Id*. (citing Doc. #10-7, *PageID* #s 490, 503). He also reviewed her other medical records, which demonstrated that she had normal toe and tandem gait as well as a negative Romberg test. *Id*. (citing Doc. #10-7, *PageID* #490). As a result, ALJ Barnes concluded that the record failed to support any "significant work-related functional limitations related to these conditions[.]" *Id*.

Although Plaintiff points to symptoms and limitations that she reported to a neurologist, she fails to provide a medical opinion supporting the inclusion of functional limitations due to her TBI or migraines. In fact, Plaintiff fails to identify any additional limitations caused by these conditions that were not accounted for by the ALJ. As noted by ALJ Barnes, Plaintiff's brain

imaging studies and other relevant assessments were, at most, mildly abnormal and her mild and occasional headaches were controlled with chiropractic manipulation and medication. Accordingly, ALJ Barnes' decision to not include functional limitations related to these conditions is supported by substantial evidence. Thus, no reversible error occurred at Step Two, and Plaintiff's assertions otherwise are unpersuasive.

### B. RFC Determination

Plaintiff also argues that the ALJ erred by failing to include any visual limitations in the RFC determination due to Plaintiff's severe vision impairments of refractive amblyopia, alternating exotropia nystagmus, and diplopia. (Doc. #13, *PageID* #s 990-91).

An individual's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1545(c) ("If your case is at the administrative law judge hearing level …, the administrative law judge … is responsible for assessing your residual functional capacity."). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e*., opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v.*

*Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). If substantial evidence supports the ALJ's RFC assessment, "the Court defers to that determination even in the face of substantial evidence supporting the opposite conclusion." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4–5 (6th Cir. July 12, 2021) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

As noted previously, Plaintiff's challenges to the ALJ's decision stems from the omission any visual limitations in her RFC. (Doc. #13, *PageID* #s 990-91). According to Plaintiff, the need for visual limitations is supported by her testimony, the fact that the questionnaire had to be read to her because of her vision problems at her June 2019 evaluation, and the ALJ's own finding that Plaintiff had multiple severe visual impairments. *Id*.

Plaintiff's argument fails for several reasons. Out the outset, it is well-settled that a mere diagnosis along with alleged symptoms fail to establish the existence of significant functional limitations. *See Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (citations omitted) ("The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time."). Thus, the fact that Plaintiff has been diagnosed with visual impairments, including refractive amblyopia, alternating exotropia nystagmus, and diplopia, is insufficient, alone, to merit functional limitations in her RFC. Indeed, in determining that these conditions did not warrant functional limitations in Plaintiff's RFC, ALJ Barnes acknowledged that Plaintiff had an "intermittent" small amplitude vertical nystagmus that caused abnormal muscle function but also pointed out that the medical records demonstrated that her eye fundus was normal, her visual fields were normal, and

her visual acuity with best correction was tested at 20/60 in both eyes. (Doc. #10-2, *PageID* #58) (citing Doc. #10-7, *PageID* #s 642, 647, 654).

In determining Plaintiff's RFC, ALJ Barnes also considered Plaintiff's testimony regarding her visual limitations. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms but that her description of the intensity, persistence, and limiting effects of their symptoms were not entirely consistent with the evidence in the record. In support, ALJ Barnes noted that vestibular therapy had been recommended for her visual impairments, but that she otherwise had only mild vision loss with normal visual fields tests. *Id*. at 66.

Further, the record does not contain any medical opinion detailing how these visual impairments impact Plaintiff's functioning to the point that they would require restrictions in her RFC. Indeed, neither of the record reviewing physicians, Gail Mutchler, M.D. and Diane Manos, M.D., even found Plaintiff's loss of visual acuity to be considered severe impairments. (Doc. #10-3, *PageID* #s 104, 118, 132). In fact, apart from her own testimony and an evaluation note that a questionnaire had to be read to her, Plaintiff fails to point to any evidence to support a finding that visual limitations should have been included in her RFC.

In short, ALJ Barnes appropriately considered all of the evidence of record and rendered an RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and medical opinions. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence"). Further, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff

who "bears the burden of proving the existence and severity of limitations caused by her impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it was Plaintiff's burden to convince the ALJ that these impairments mandated stricter limitations. She failed to do so. *See, e.g., Cejka v. Comm'r of Soc. Sec.,* No. 12-11102, 2013 WL 1317213, at *15 (E.D. Mich. Feb. 27, 2013), *report and recommendation adopted*, No. 12-11102-DT, 2013 WL 1294133 (E.D. Mich. Mar. 29, 2013) ("Plaintiff acknowledges that no treating physician imposed any limitations on plaintiff as a result of her carpal tunnel syndrome, and does not point to any limitations imposed by any consulting or examining physician."). As a result, Plaintiff's alleged error to the ALJ's RFC determination is also without merit.

### C. Medical Opinions

Plaintiff also challenges the ALJ's review of the mental impairment questionnaire completed by her therapist, Rachel White, MS/LPC, and psychiatric provider, Heather Townsend MPAP, PA-C. (Doc. #13, *PageID* # 991).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because Plaintiff's claim for disability was filed in March 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 404.1520c(a). Instead,

the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc.*

11

*Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

After treating Plaintiff for one month, Rachel White MS/LPC, and Heather Townsend, MPAP, PA-C, completed an assessment on Plaintiff's behalf in August 2020. (Doc. #10-8, *PageID* #s 973-76). In the assessment, they diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and PTSD. *Id.* at 973. They indicated that Plaintiff had the following symptoms: poor memory; sleep disturbance; mood disturbances; social withdrawal or isolation; decreased energy; recurrent panic attacks; anhedonia or pervasive loss of interests; intrusive recollections of a traumatic experience; psychomotor agitation or retardation; generalized persistent anxiety; feelings of guilt/worthlessness; difficulty thinking or concentrating; hostility and irritability. *Id.* They also indicated that Plaintiff has a 10-year history of domestic violence from her ex-husband that has resulted in TBI, impacting her memory, vision, and other acts of daily living. *Id.* However, when asked whether Plaintiff's psychiatric condition exacerbates her pain or other physical symptoms, Ms. White and PA Townsend indicated "no." *Id.*

Ms. White and PA Townsend also found that Plaintiff is primarily moderately to markedly limited in understanding, remembering, or applying information; moderately to extremely limited in concentrating, persisting, or maintaining pace; and moderately to extremely impaired in adapting or managing herself. *Id.* at 974. They concluded that Plaintiff is moderately limited in her overall ability to learn, recall, or use information to perform work activities. *Id.* at 975. They also

12

determined that Plaintiff is markedly limited in her abilities to relate to and work with supervisors, co-workers, and the public, to focus attention on work activities and to stay on task at a sustained rate, and to regulate her emptions, control her behavior and maintain well-being in a work setting. *Id*. Finally, they opined that Plaintiff would be unable to perform regular, full-time, competitive work without missing work more than three times per month or without being off task more than 20% or the workday. *Id.* at 974.

In reviewing the opinions of Ms. White and PA Townsend, ALJ Barnes concluded that their opinions were not persuasive. (Doc. #10-2, *PageID* #60).  In support, the ALJ stated that Plaintiff's treatment records do not support the level of limitations opined to by Ms. White and PA Townsend. *Id*. He pointed out that Plaintiff's mental status examinations indicated, at most, moderate-level symptoms with Plaintiff maintaining a comparatively high level of social functioning, engaging in activities such as regularly taking public transport, focusing on getting out of the house, attending her daughter's soccer game, living independently, and considering getting a job at one point. *Id*. (citing Doc. #10-7, *PageID* #s 563, 589, 591, 595).  ALJ Barnes also observed that Plaintiff was able to exercise fair to normal judgment and insight, logical though process, and normal thought content. *Id*. (citing Doc. #10-7, *PageID* #s 2F at 390, 718; Doc. #10-8, *PageID* #s 801, 965).  As a result, the ALJ found that Plaintiff's level of cognitive function was indicative of an ability to perform at least simple, repetitive tasks as opposed to precluding any and all work as suggested by Ms. White and PA Townsend. *Id*.

The ALJ's reasons for finding the opinions of Ms. White and PA Townsend not persuasive are clearly articulated and supported by substantial evidence.  The ALJ specifically discussed the

two most important factors listed in 20 C.F.R. § 404.1520c—supportability and consistency. He pointed out that discrepancies between their opined limitations of Plaintiff's functioning and their clinical conclusions that Plaintiff's mental status examinations showed, at most, moderate limitations. Indeed, on the mental status examinations she completed, Ms. White reported that Plaintiff presented as cooperative with euthymic mood, clear speech, logical thought processes, and oriented to person, place, time, and situation. (Doc. #10-8, *PageID* #s 957, 960, 969, 971). Similarly, PA Townsend indicated that at the examination she completed, Plaintiff was in an aggravated mood, but her affect was congruent to her mood and appropriate to content. *Id*. at 965. She also reported that while Plaintiff's thought process was circumstantial at times, it was mostly logical, linear, goal-directed. *Id*. Plaintiff also had an average fund of knowledge with fair judgment and fair insight. *Id*.

ALJ Barnes also pointed out inconsistencies between the opined limitations provided by Ms. White and PA Townsend and the balance of the record demonstrating that Plaintiff "does not appear to be as isolative as she alleges and exhibits some indicators of an ability to adapt." (Doc. #10-2, *PageID* #60). Further, ALJ Barnes evaluated the different categories of mental functioning and found that Plaintiff had no more than moderate limitations while Ms. White and PA Townsend found her to be primarily markedly limited in all of these categories. (*Compare* Doc. #10-2, *PageID* #s 61-62 *with* Doc. #10-8, *PageID* #975). In fact, in the context of discussing the severity of Plaintiff's mental impairments, ALJ Barnes provided an in-depth explanation as to why he concluded that Plaintiff only had, at most, moderate limitations in the realms of mental functioning. (Doc. #10-2, *PageID* #s 61-62). This also supports the ALJ's conclusion that the opinions of Ms.

14

White and PA Townsend were inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how she considered the supportability and consistency factors).

Additionally, while ALJ Barnes did not find the opinions of Ms. White and PA Townsend to be persuasive, he did include several restrictions in Plaintiff's RFC that accommodate her psychological limitations. In fact, the ALJ restricted Plaintiff to (1) performing simple, routine and repetitive tasks; (2) no fast-paced production requirements; (3) involving only simple, work-related decisions; (4) few, if any, workplace changes; and (5) occasional public interaction; (6) occasional interaction with coworkers; and (7) no tandem tasks. (Doc. #10-2, *PageID* #s 63-64). In formulating this RFC, the ALJ thoroughly considered all of the evidence of record and rendered a mental RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and state medical opinions. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence").

For these reasons, the undersigned finds that substantial evidence supports the ALJ's review of the opinions of Ms. White and PA Townsend. Based on the foregoing, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #13) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 23, 2022                               *s/Peter B. Silvain, Jr.*
                                                 Peter B. Silvain, Jr.
                                                 United States Magistrate Judge